## THE DOON.

### PETIT v. TURNER.

(Circuit Court of Appeals, Fifth Circuit. December 7, 1920.)

No. 3515.

**Shipping ⊂⊃37—Ratification of change in charter party.**

Where a charter party, after being signed by the charterer, was changed before it was signed by the owner, so as to provide that charterer should pay freight on a stated tonnage, whether loaded to full capacity or not, but charterer's attention was called to the change while the vessel was loading, and notified that loading would stop unless it was agreed to, his permitting the loading to proceed without objection *held* a ratification of the change, and to estop him from denying liability thereunder.

Appeal from the District Court of the United States for the Southern District of Alabama; Robert T. Ervin, Judge.

Suit in admiralty by Horace Turner, managing owner of the American bark Doon, against Ferdinand Petit. Decree for libelant, and respondent appeals. Affirmed.

Gregory L. Smith, of Mobile, Ala., for appellant.
Wm. B. Inge, of Mobile, Ala., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. The appellant, the charterer of the bark Doon, paid freight at the charter rate on 1,264.6 tons of staves loaded on the vessel, agreeing at the time that the acceptance of that amount by the appellee, the managing owner of the vessel, should be without prejudice to the claim of the latter that he was entitled under the charter to freight on an additional 85.4 tons. This claim, which was asserted by the libel, was based on the following provision in the charter party:

"Charterers to load vessel to her full dead weight, but guarantee to pay freight upon 1,350 tons."

The appellant's resistance to the claim is based upon the circumstance that, when his representative signed a charter party for the vessel and handed it to an agent of the brokers, who were to procure the signing of it by the appellee, the instrument contained the following provision:

"Charterers guarantee to load vessel to her full dead weight carrying capacity of thirteen hundred and fifty (1,350) tons or pay the difference"

—and that prior to signing the instrument the appellee so changed its terms as to substitute the first-quoted provision for the last-quoted one. Evidence adduced was to the following effect:

The chartering of the vessel was the result of negotiations between the appellee and the representative of shipbrokers who acted at the instance of the appellant, their commission, however, being paid by the appellee, the shipowner, as was customary in such case. The instrument signed by the appellant was handed to a New Orleans representative of the brokers, with the request that appellant be furnished with a certified copy of the instrument after it had been signed by the appellee. When the Mobile representative of the brokers presented to the appellee the instrument which had been signed by the appellant's agent, the appellee objected to the last above quoted clause of it, and, in the presence and with the knowledge of the Mobile representative of the brokers, made the above-mentioned change in the instrument. Certified copies of the instrument as it was when it was signed by the appellee were sent by the Mobile representative of the brokers to their New Orleans representative, and the latter sent one of those copies to the appellant. The change made by the appellee was not at the time the copies were sent called to the attention of the appellant or of the New Orleans representative of the brokers, and neither the appellant nor the New Orleans representative of the brokers knew of the change until after part of the cargo had been loaded on the vessel.

By the terms of the charter party the vessel was chartered to carry

"a full and complete cargo of oak staves, under and on deck." from the port of Mobile, Ala., to Cette, France, or Bordeaux, France, at charterer's option. After the vessel had been about one-third loaded with dry, light-weight staves, the appellee went to New Orleans and had an interview with the appellant's representative. In that interview the appellee called attention to the fact that the staves being put on the vessel were so light that, if the cargo were made up of such staves, the vessel would not be loaded to her dead weight capacity, suggested that if heavier staves were furnished the vessel would have her dead weight of 1,350 tons, called attention to the above-quoted provision in the charter as it was when signed by the appellee, and explicitly stated that payment of freight on 1,350 tons would be insisted on, saying that, if they were going to have any trouble about the charter party, he wanted to have it then, and stop loading the boat and have it out. The appellant's representative, after examining the copy of the instrument handed to him by the appellee, said:

"Looks like we will have to pay you on this dead weight. However, I will consult my attorney about it. Now, you go on back to Mobile, and you and I are not going to fall out about this."

It was not intimated on that occasion that the paper made use of as a copy of the contract between the parties did not correctly disclose what they had agreed to. Later during the day of that interview the appellant's representative learned of the above-mentioned change made in the instrument after he signed it. The loading of the vessel was proceeded with for about two weeks after that day, and until the loading was practically completed, without the appellee being informed that the appellant did not acquiesce in the former's claim to freight at the charter rate on 1,350 tons, whether the staves loaded on the vessel should or should not weigh that much.

Counsel for the appellee contends that the change made in the charter party by the appellee after it had been signed by the appellant's agent did not amount to a material alteration, and that both the original and the substituted provision required payment of freight on 1,350 tons, whether the cargo loaded on the vessel did or did not weigh that much. In support of the opposing contention that the change was a material one, it was urged that the word "load," used in both the original and the substituted provision, was shown by other provisions of the instrument to mean delivery alongside the vessel. These opposing contentions need not be passed on. It may be assumed that, if the above-mentioned interview had not occurred, the claim asserted by the libel could not be sustained, because the appellant was not bound by the instrument, which was changed after he signed it. The appellant, after being informed that the loading of the vessel would be stopped if he disputed appellee's claim that he would be entitled to freight on 1,350 tons, whether the staves constituting the cargo should or should not weigh that much, and after learning of the change made in the instrument after he signed it, allowed the loading of the vessel to be proceeded with without controverting the appellee's claim as to the tonnage on which payment of freight would have to be made. By that conduct the appellant estopped himself from claiming, in the

contingency which arose, that he was liable only for freight on the amount of staves actually loaded on the vessel.

After being explicitly informed that the payment of freight on 1,350 tons would be insisted on, and that if there were any dispute on that score the loading of the boat would be stopped, the appellant, having knowledge of the change in the terms of the charter party, could not remain silent, thereby inducing the appellee to change his position by permitting the loading of the vessel to be proceeded with, and at the same time retain the right of resisting the claim asserted by the libel on the ground that the terms' of the instrument he signed ·do not support that claim. His conduct amounted to an acquiescence in the appellee's statement that he was to be paid freight at the charter rate on 1,350 tons, and precluded the making of the defense based on the above-mentioned change in the terms of the charter party. Under the circumstances the continued silence of the appellant's representative after learning of the change made in the instrument after he signed it had the effect of a ratification of the change. The appellant could not procure the further acceptance of cargo by the appellee and remain free to repudiate the terms on which such acceptance was expressly conditioned.

There was no evidence to indicate that the ignorance of the appellant's representative, prior to the day of the above-mentioned interview, of the change made in the instrument after he signed it, was due to any fault of the appellee. In no way did the latter agree to the use of his vessel, except on the terms stated in the instrument he signed.

It is suggested that the vessel could have taken on more light-weight staves, if it had been ballasted differently. It was not made to appear that, in the absence of information as to the kind of staves that would be delivered for shipment, the appellee was at fault in the matter of ballasting the vessel. It might have been otherwise if the appellant had given timely notice that only dry, light-weight staves were intended to be shipped.

The decree is affirmed.